UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


ELIAS B. RIZK,                                :
        Plaintiff                       :
                               :
        v.                              :   CIVIL NO. 1:14-CV-0619
                               :
STATE FARM FIRE AND CASUALTY   :
COMPANY,                          :
        Defendant                      :


*M E M O R A N D U M*


*I.*       *Introduction*

      We are considering a motion for summary judgment.  (Doc. 25).  This matter relates to a dispute concerning the denial of an insurance claim.  Plaintiff filed a complaint in the Pennsylvania Court of Common Pleas of Dauphin County, alleging that Defendant breached a contract of insurance by improperly denying coverage for water damage to his home and personal property.  (Doc. 1-2 at 9).  He also claims that Defendant acted in bad faith, entitling him to special damages pursuant to 42 PA. CONS. STAT. ANN. § 8371.  Defendant removed the action to this court and now seeks summary judgment.  (Doc. 25).  For the reasons discussed below, we will deny Defendant's motion.

*II.*       *Background*

      In 2005, Plaintiff purchased a townhome located at 517 Northstar Drive, Harrisburg, Pennsylvania.  (Doc. 32-1 at 4).  Between July 2012 and June 2013, he

temporarily relocated to Alabama to attend school.  (Doc. 25 at 6; Doc. 32 at 5).  During that time, Plaintiff's townhome was unoccupied.  (Id.).  Plaintiff returned approximately once a month to check the home, and he also had his friend, Akshal Patel, check the property once or twice a month.  (Id.).  In December of 2012, Plaintiff instructed Patel to set the home's thermostat at the lowest possible setting, which was forty-eight degrees Fahrenheit.  (Doc. 25 at 2; Doc. 32 at 2).  In mid-January 2013, Plaintiff checked the property and found no problems.  (Doc. 25 at 3; Doc. 32 at 3).

On February 7, 2013, Plaintiff received an email from a neighbor.  (Doc. 25 at 3).  The neighbor informed Plaintiff that she noticed ice forming along the foundation of his house.  (Doc. 25-7 at 2).  She went to Plaintiff's front door to notify him and heard water rushing inside the home.  (Id.).  The water company responded and shut off the water supply to Plaintiff's home, but the technician reported there was water throughout the house.  (Id.).  Upon receiving the email, Plaintiff returned to Harrisburg and discovered that the water supply line to the vanity in the second floor bathroom froze and came apart, causing water to run from the second floor down to the basement for an extended period of time.  (Doc. 25 at 3-4; Doc. 32 at 3-4).

At the time of the damage, Plaintiff's home was insured pursuant to a homeowners insurance policy issued by Defendant.  (Doc. 25 at 4; Doc. 32 at 3).  Plaintiff reported the damage to his State Farm agent and asked for information on what steps to take to remedy the problem.  (Doc. 25 at 4; Doc. 32 at 4).  His agent recommended that Plaintiff contact a cleaning service and provided him with a list to choose from.  (Id.).  Plaintiff contacted Service 1st Restoration and Remodeling.  (Id.).  Service 1st provided

Plaintiff with a personal property inventory form to catalog the personal property that was damaged by the flooding.  (Doc. 32 at 11).  Plaintiff's inventory included an estimated $65,000 worth of property, including medical books, his dining room table, and personal property that belonged to Patel.  (Doc. 25 at 11-14).

Upon receiving Plaintiff's claim, Defendant informed Plaintiff that it would not commit to coverage until it determined whether heat had been maintained in the home. (Doc. 25 at 9; Doc. 32 at 8).  Pursuant to the terms of the policy, unless the insured "used reasonable care to (1) maintain heat in the building or (2) shut off the water supply and drain the system of water," Defendant would not insure for any loss in an unoccupied structure that resulted from frozen plumbing.[1]  (Doc. 25-8 at 14).  Accordingly, Defendant initiated an investigation into the heating of Plaintiff's home.

According to Defendant, Plaintiff advised that he kept the home between fifty-five and fifty-seven degrees.  (Doc. 25 at 7).  Defendant requested copies of Plaintiff's

---

1.  In total, the policy exclusion states the following:

> We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
> . . .
>> b.  freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.  This exclusion only applies while the dwelling is vacant, unoccupied or being constructed.  This exclusion does not apply if you have used reasonable care to:
>>> (1) maintain heat in the building; or
>>> (2) shut off the water supply and drain the system and appliances of water;
>> . . . .

(Doc. 25-8 at 14).

3

utility bills, which indicated that he used $12.44 worth of gas in December of 2012 and $13.10 worth of gas in January of 2013.  (Doc. 25 at 5).  Defendant retained Michael Zazula of IEI Consulting, Inc. to investigate the gas consumption and heat in Plaintiff's home.  (Doc. 25 at 8).  Zazula inspected Plaintiff's heating system and spoke to Plaintiff's furnace repairman, Randy Shearer.  (Id.).  Shearer informed Zazula that the furnace malfunctioned; the "furnace locked out due to a flame roll-out switch fault code and did not function."  (Id. at 9).  Shearer also informed Zazula that once the flame roll-out switch was manually reset, the furnace was operational again.  (Id.; Doc. 32-8 at 3-4).  Zazula concluded there was a lack of adequate heat in the home.  (Doc. 25 at 10).  In his final report, he reasoned that "since there was low gas consumption (as opposed to no gas consumption as would be the case if the furnace was not operating), the thermostat was not properly/adequately set," causing Plaintiff's pipes to freeze and burst.  (Id.).

Based on the results of its investigation, Defendant denied Plaintiff's claim. (Doc. 25 at 9).  In a letter to Plaintiff dated March 19, 2013, Defendant explained as follows:

> Thank you for allowing State Farm the opportunity to inspect this loss.  We have completed our investigation involving the frozen pipe loss (both hot & and cold supply risers) that originated in the 2nd floor front bathroom.  Based on our findings it has been determined that reasonable heat was not maintained or water supply shut off which caused the freezing of the plumbing lines.  Unfortunately, freezing of pipe losses are excluded on the Homeowners Policy if reasonable care was not maintained.

(Doc. 25-11 at 2).  The letter went on to recite the exclusionary language in Plaintiff's policy.  See supra note 1.

On March 7, 2014, Plaintiff filed his complaint.  (Doc. 1-2).  Citing the letter sent by Defendant on March 19, 2013, Plaintiff claims that Defendant denied him coverage because "reasonable heat was not maintained in the home."  (Doc. 32 at 48). He argues, however, that the policy does not require "reasonable heat."  (Id.).  It only requires that he use "reasonable care to maintain heat."  (Id.).  Thus, Plaintiff alleges that Defendant breached the insurance contract and acted in bad faith.  (Doc. 1-2).  Defendant filed its motion for summary judgment on May 8, 2014.  (Doc. 25).  It makes two arguments in support.  First, it argues that the policy is void because Plaintiff engaged in concealment or fraud.  (Id. at 27).  Alternatively, it argues that it is entitled to summary judgment on the bad faith claim because it had a reasonable basis for denying coverage. (Id. at 36).

III.        *Discussion*

         *A.  Standard of Review*

         We will examine the motion for summary judgment under the well-established standard:  summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Lawrence v. City of Phila, 527 F.3d 299, 310 (3d Cir. 2008).  We "must view all evidence and draw all inferences in the light most favorable to the non-moving party," and we will only grant the motion "if no reasonable juror could find for the non-movant."  Id.  "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'"  Roth v. Norfalco,

651 F.3d 367, 373 (3d Cir. 2011) (quoting <u>Lamont v. New Jersey</u>, 637 F.3d 177, 181 (3d Cir. 2011)).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  With this standard in mind, we turn to the merits of Defendant's motion.

    *B. Concealment or Fraud*

    Plaintiff's insurance policy contains the following provision:  "Concealment or Fraud.  This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss."  (Doc. 25-8 at 24). Under Pennsylvania law, to void an insurance contract for misrepresentation, the insurer must establish that (1) the representation was false, (2) the insured knew it to be false when made or acted in bad faith, and (3) the representation was material to the risk being insured.  <u>Matinchek v. John Alden Life Ins. Co.</u>, 93 F.3d 96, 102 (3d Cir. 1996) (citing <u>New York Life Ins. Co. v. Johnson</u>, 923 F.2d 279, 281 (3d Cir. 1991)).  Defendant argues that it has satisfied these elements in three respects.

    First, it asserts that the medical books that Plaintiff included in his personal property inventory were not damaged.  (Doc. 25 at 29-30).  Defendant alleges that after this action was commenced, it conducted an inspection of the home.  (<u>Id.</u>).  While in the basement, inspectors moved a mattress and a roll of carpet to find a bookshelf.  (<u>Id.</u>). That bookshelf, according to Defendant, contained the books Plaintiff included in his

inventory.  (Id.).  Second, it argues that Plaintiff misrepresented the damage,

craftsmanship, and value of his dining room table.  In his inventory, Plaintiff listed the table

as "Amish made" and valued it at $7,500.  Defendant argues that there was no water

damage in the dining room and therefore any damage to the table cannot be related to the

water in Plaintiff's home.  (Id. at 30-31).  It also claims that the words "Made in Malaysia"

are clearly written on the underside of the table, making the table worth $500.  (Id.).  Last,

Defendant states that Plaintiff submitted expenses to State Farm for the cleaning of "soft

goods" and clothing.  (Id. at 31-32).  It asserts this property was not covered under the

policy because it was owned by Patel, not Plaintiff.  (Id.).  Based on these alleged

misrepresentations, Defendant argues that the insurance policy is void and it is entitled to

summary judgment on all counts.

　　　　　We find that genuine issues of material fact preclude summary judgment on

this ground.  With respect to the medical books, Plaintiff first points out that two years

elapsed between the damage to his home and Defendant's discovery of the books in his

basement.  (Doc. 32 at 43).  He claims that in that two year period the books were

replaced.  (Id.).  According to Plaintiff, it was the replacements that Defendant found.  He

also asserts that the books were in the basement behind a mattress and roll of carpet, not

because he was attempting to conceal them, but because the basement is used for

storage.  (Id. at 42).  He claims that his lack of intent to conceal is evidenced by the fact

that he assisted Defendant in moving the mattress and carpet to reveal the books.  (Id.).

　　　　　With respect to the dining room table, Plaintiff has produced evidence that

the table was in fact damaged when Service 1st employees put wet material on it.  (Id. at

43).  Further, at a deposition, he testified that when he purchased the table, he was told it was Amish made, and he had no reason to look under the table to see the words "Made in Malaysia."  (Id. at 43-44).  Finally, he states that he never represented to Defendant that it had a value of $7,500.  (Id.).  He claims that in response to discovery requests by Defendant, he listed the value of the table, together with two other pieces of furniture, as $1,500.  (Id.).

Last, with respect to the cleaning of soft goods and clothing, Plaintiff states that he believed the property was covered by the policy.  (Id. at 45).  He points to the language on page three of his policy.  First, the policy states: "[a]t your request, we will cover personal property owned by others while the property is on the part of the residence premises occupied exclusively by an insured."  (Doc. 25-8 at 8).  In the following paragraph it states: "[w]e cover personal property usually situated at an insured's residence, other than the residence premises, for up to $1,000 or 10% of the Coverage B limit, whichever is greater."  (Doc. 25-8 at 8).

Viewing the evidence in the light most favorable to Plaintiff, we find that there are questions of material fact concerning whether Plaintiff made false representations to Defendant, and if so, whether he knew the statements were false when made.[2]  Accordingly, we will deny Defendant's motion for summary judgment on this ground.

_____

2.  We also note that questions of fact exist concerning the materiality element.  In the context of a post-loss investigation, to satisfy the materiality element, the false statement must concern a subject relevant to the insurer's investigation.  Millard v. Shelby Cas. Ins. Co., No. 3:CV-02-1902, 2005 WL  2035860 at *4 (M.D. Pa. Aug. 24, 2005).  Here, contrary to Defendant's argument, Plaintiff claims that since Defendant denied him coverage based on a lack of heat, any representation he made about personal property damage was not relevant to Defendant's investigation.  (Doc. 32 at 41-42).

### C.  Bad Faith

Count III of Plaintiff's complaint alleges that Defendant acted in bad faith, entitling Plaintiff to special damages pursuant to 42 PA. CONS. STAT. ANN. § 8371.[3]  The root of Plaintiff's bad faith claim is his allegation that Defendant denied coverage using the wrong standard – *i.e.*, whether there was "reasonable heat in the home" as opposed to whether he used "reasonable care to maintain heat."  According to Plaintiff, because Defendant applied the wrong standard, it acted in bad faith by, *inter alia*, misrepresenting the terms of the policy, performing an inadequate investigation, and providing an inadequate letter of denial.  (Doc. 32 at 50-57).  To recover under a claim of bad faith, the plaintiff must show by clear and convincing evidence that (1) the defendant did not have a reasonable basis for denying benefits under the policy, and (2) the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.  Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 689 (Pa. Super. Ct. 1994).  Defendant argues that it is entitled to summary judgment on Plaintiff's bad faith claim because its basis for denial was reasonable.  (Doc. 25 at 36-42).

Before we can answer whether the basis for Defendant's denial was reasonable, we must first determine what the basis for denial actually was.  As to that

---

3.  Section 8371 states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. ANN. § 8371.

question, there is a dispute of fact.  Citing various communications from Defendant,

Plaintiff claims that Defendant denied coverage because there was not "reasonable heat"

in the home.[4]  Conversely, in its supporting brief, Defendant claims that it denied coverage

because Plaintiff did not use reasonable care to maintain heat – the correct standard

under the policy.  (Doc. 25 at 39, 52) (stating that "the actual denial of coverage was

based on the policy language . . .").  It argues that its use of the phrase "reasonable heat"

refers to Plaintiff's failure set the thermostat at a temperature that would prevent freezing.

(Doc. 25 at 53).  Thus, according to Defendant, its use of "reasonable heat" means the

same thing as "reasonable care to maintain heat," and any distinction is one of semantics.

The resolution of this dispute is the province of a fact finder.  If a jury

concludes that Defendant applied the wrong standard[5] to investigate Plaintiff's claim, deny

him coverage, and issue a letter of denial, such a determination is sufficient for the jury to

find by clear and convincing evidence that Defendant (1) lacked a reasonable basis to

deny coverage and (2) knowingly or recklessly disregarded its lack of reasonable basis.

See Smith v. Allstate Ins. Co., 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012) (stating that an

"unreasonable interpretation of the policy provisions as well as a blatant misrepresentation

---

4. He points to the following evidence: (1) a notification from Defendant that it could not "commit to coverage at this time until we confirm heat maintained;" (2) correspondence from Defendant that it was still investigating "whether the residence premises was reasonably heated;" (3) communication from Plaintiff's insurance agent that Defendant needed to "determine if reasonable heat was maintained in the residence;" (4) Michael Zazula's report indicating a "lack of adequate heat" in the home; and (5) Defendant's denial letter stating that "reasonable heat was not maintained."

5. In their briefs, both parties recognize that the correct standard requires coverage if there was "reasonable care to maintain heat."  (Doc. 25 at 41, 45-51; Doc. 32 at 48).

of the facts or policy provisions will support a bad faith claim").  Accordingly, we will deny

Defendant summary judgment on Plaintiff's bad faith claim.[6]

IV.        Conclusion

        For the reasons discussed above, we will deny Defendant's motion for

summary judgment.  We will issue an appropriate order.


                                        /s/ William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge

---

6.  The parties raise two arguments we need not address.  First, the parties debate whether the meaning of "reasonable care to maintain heat" is clear, allowing us to give effect to its meaning, or ambiguous, requiring that we construe the language against Defendant.  These arguments relate to Plaintiff's breach of contract claim, which is not at issue in this motion.  Second, the parties raise arguments concerning a purported claim of equitable estoppel made by Plaintiff.  We need not address these arguments because there is no such claim.  Not only is there no mention of it in Plaintiff's complaint, but Pennsylvania recognizes equitable estoppel only as an affirmative defense, not as an independent cause of action.  Graham v. Pa. State Police, 634 A.2d 849, 852 (Pa. Commw. Ct. 1993).